**ASSET VALUE FUND LIMITED PARTNERSHIP, Plaintiff,**

v.

**THE CARE GROUP, INC., Defendant.**

**No. 97 CIV. 1487(DLC).**

United States District Court,
S.D. New York.

April 29, 1998.

Robert J. Schechter, Schechter & Nimkoff, L.L.P., New York City, for Plaintiff.

John D. Lovi, McDermott, Will & Emery, New York City, for Defendant.

*OPINION and ORDER*

COTE, District Judge.

Plaintiff Asset Value Fund Limited Partnership ("Asset Value") moves pursuant to Rule 15(a), Fed.R.Civ.P., to amend its Complaint so as to add a claim under the federal securities laws, and thereby to avoid dismissal of its action against defendant The Care Group, Inc. ("Care") for lack of federal subject matter jurisdiction. For the reasons stated, the motion is denied, and the Complaint is accordingly dismissed.

**2.** Defendants have offered to submit such materi-          als if necessary. (Def.Mem. at 20 n. 3)

## BACKGROUND

Asset Value's Complaint, filed on March 5, 1997, asserted subject matter jurisdiction based solely on the diversity of citizenship of the parties. The principal causes of action in the Complaint alleged that Care had committed breach of contract and breach of fiduciary duty in connection with a written stock purchase agreement, the Subscription Agreement, into which the parties had entered. In short, Asset Value claimed that Care was liable for failing to register in a timely fashion certain shares of Care's common stock that Asset Value had contracted to buy and Care had pledged to register under the Securities Act of 1933. Asset Value's claim for damages was based on the fact that the value of the shares had plummeted during the long period of time—including up through the date of the Complaint—that it was unable to sell the shares on the open market due to the lack of registration.

After a June 1997 Initial Pretrial Conference, the parties conducted several months of discovery, receiving multiple extensions of both fact and expert discovery; pursued settlement negotiations with the Magistrate Judge, which ultimately proved unsuccessful; and eventually were placed on the Court's trial ready calendar, with a Pretrial Order due date of January 23, 1998. Three days before the Pretrial Order was due, the Court received a letter from defense counsel notifying it of a fact dispositively preclusive of diversity jurisdiction—that Asset Value's sole general partner was a company incorporated in Delaware, the same state of incorporation as Care. Asset Value did not deny the accuracy of this claim, nor that such a situation negated diversity and deprived this Court of federal subject matter jurisdiction. Instead, Asset Value proposed that it be permitted to amend its Complaint—ostensibly based on newly discovered evidence—to allege a cause of action for securities fraud pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, which would necessarily confer federal question jurisdiction upon this Court. Asset Value maintained that it had been "considering" making such an amendment "even before this jurisdictional defect was discovered," but was unable to do so "because it did not have any 'hard' information" concerning Care's securities violations until deposing certain of Care's officials in the weeks before the Pretrial Order date.

The Court removed the case from the trial ready calendar and set a briefing schedule for Asset Value's motion to amend, which was fully submitted in early March. By letter dated April 15, 1998, Asset Value requested that the motion be granted on the strength of a press release issued that day by Care, which according to Asset Value "amount[ed] to an outright confession that the allegations of the proposed securities fraud Count [were] essentially correct."

## DISCUSSION

The portion of Rule 15(a) on which Asset Value bases its motion provides that parties may amend their pleadings "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Rule 15(a), Fed. R.Civ.P. The Supreme Court has set forth clear guidelines on when courts should allow such amendments:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234 (2nd Cir.1995) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Delay alone does not warrant denial of leave to amend, *id.* at 234–35, but a motion to amend may be denied if the amendment would be futile, *Foman*, 371 U.S. at 182, 83 S.Ct. 227; *see also Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990).

Care asserts that amendments of pleadings with respect to jurisdiction—as it characterizes Asset Value's proposed amendment here—are governed by 28 U.S.C. § 1653, which states: "Defective allegations of juris-

diction may be amended, upon terms, in the trial or appellate courts." The language of Section 1653 is "[i]n some respects ... at variance with the text of Rule 15 and arguably supersedes it. However, the cases do not reveal any conflict between the two." 6 Charles Allen Wright *et al., Federal Practice and Procedure* § 1474 (2d ed.1990). Indeed, case law indicates that Section 1653 serves essentially as a specific application of Rule 15 that "expressly permits amendments to cure inadequate jurisdiction." 3 James Wm. Moore *et al., Moore's Federal Practice* § 15.14[3] (3d ed.1997) (describing similar functioning of Rule 15 and Section 1653). *See also Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 477 F.Supp. 615, 618–19 & n. 5 (S.D.N.Y.1979) (noting similar applications of Rule 15 and Section 1653 although "the language of that section is more specific than that of" the Rule). Asset Value does not dispute that cases construing motions to amend under Section 1653 are germane to its motion here, and in any event expressly notes its agreement with the proposition that " § 1653 is supplemented by F.R.C.P. 15, which allows amendment of pleadings, amounting to a new filing, if the prerequisites set forth in the Rule are met." (Quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala,* 793 F.Supp. 444, 447 (S.D.N.Y.1992 ), *rev'd on other grounds* 989 F.2d 572 (2d Cir.1993)). In these circumstances, and given that the Court sees little (if any) difference in the substantive principles governing application of Rule 15 and Section 1653, the Court considers cases discussing both provisions in resolving this motion.

Several points remain true under either standard. First, courts should "freely grant leave to amend jurisdictional allegations," and should refrain from dismissing actions "based solely on a *technical error* in jurisdictional pleading." 6 Moore § 15.14[3] (emphasis added) (discussing Rule 15). *See also Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 252 (2d Cir.1991) (Rule 15); *Pressroom Unions–Printers League Income Sec. Fund v. Continental Assurance Co.,* 700 F.2d 889, 893 (2d Cir.1983) (Section 1653). But perhaps most important for present purposes, while

plaintiffs may "correct the[ir] complaint to show that jurisdiction does in fact exist[,] ... *if there is not federal jurisdiction, it cannot be created by amendment.*" 6 Moore § 15.14[3] (emphasis added) (Rule 15). *See also Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 831, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) (Section "1653 speaks of amending *'allegations* of jurisdiction,' which suggests that it addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves.") (emphasis in original); *Pressroom Unions–Printers,* 700 F.2d at 893 ("[W]e have never allowed [Section 1653] to create jurisdiction retroactively where none existed." It "allows 'amendment only of defective *allegations* of jurisdiction; it does not provide a remedy for defective jurisdiction itself.' ") (emphasis in original) (citation omitted).

Under these standards, Asset Value's motion to amend must be denied. Asset Value concedes that there is no diversity among the parties; thus its motion to add a federal securities fraud claim seeks not to correct a defect in the allegation of extant and otherwise valid jurisdictional facts, but to add an entirely new cause of action, based on facts not alleged in the original complaint, to create a different basis for federal subject matter jurisdiction. *See id.* (affirming denial of motion to amend that did not "remedy inadequate jurisdictional allegations, but rather [attempted] to substitute a new action over which there is jurisdiction for one where it did not exist"). A comparison of the original allegations and those in the proposed amended complaint makes plain the nature of Asset Value's intended amendment, and that it is impermissible in the circumstances of this case.

As noted, the original complaint alleged that Care had committed breach of contract and breach of fiduciary duty based on its failure to register stock for Asset Value in accordance with the parties' Subscription Agreement. The thrust of Asset Value's motion to amend is that the proposed Section 10(b) claim in the amended complaint arises out of the transactions and occurrences underlying the claims in the original complaint, and was in addition presaged by those origi-

nal allegations. Asset Value focuses on its original breach of fiduciary duty claim, arguing on the basis of that claim that

> [t]he original complaint went well beyond a simple breach of contract, ... and plainly put [Care] on notice that [Asset Value] was accusing [Care] of deceptive, malicious conduct of a tortious nature involving fraud and an improper resolve to favor a major shareholder ... at [Asset Value's] expense.

The allegations in the original complaint to which Asset Value points in particular include (i) that Care "had determined to pursue other corporate transactions for the benefit of other shareholders"; (ii) that Care had "devised a plan to neutralize [Asset Value's] stock ownership by indefinitely delaying the registration of the Care Shares"; (iii) that Care's plan "was designed to favor other shareholders or potential shareholders of the company at [Asset Value's] expense and to limit [Asset Value's] ability to participate in transactions designed to favor those other shareholders or potential shareholders"; and (iv) that Care's conduct "was wanton, malicious, unprivileged and willful." According to Asset Value, even though the original complaint "did not expressly set forth a cause of action for fraud," given the preceding allegations,

> [Care] must have reasonably understood such potential claims to be simmering quite near the surface of the claims that were in fact expressly set forth. From the start, this was not simply a breach of contract case but a case alleging malicious, tortious conduct .... Thus, the basic themes and subject matter of the proposed Amended Complaint were clearly and emphatically established from day one.

Simply put, the Court disagrees. While the breach of fiduciary duty claim certainly (and necessarily) alleged "tortious conduct," in no way did that claim, or any of the other allegations in the original complaint, put

Care on notice that it was or would be facing a securities fraud claim. Most important, nothing in the original complaint came remotely close to alleging that Care had committed fraud or deceptive practices "in connection with the purchase or sale of securities," *In re Time Warner Inc. Secs. Litig.,* 9 F.3d 259, 264 (2d Cir.1993), which is the hallmark of a securities fraud claim under Section 10(b) and Rule 10b–5.[1] Once again, *both* of Asset Value's original claims (for breach of contract *and* breach of fiduciary duty) were concerned solely with Care's alleged failure—for whatever reason—to *register stock* that Asset Value had contracted to buy pursuant to the parties' Subscription Agreement. There was not the slightest hint in those original allegations that Care was being accused of wrongdoing based on its conduct at the front end of the parties' relationship, *i.e.,* in the formation of the Subscription Agreement and the negotiations whereby Asset Value agreed in the first instance to purchase Care common stock.

Indeed, it is only in the proposed amended complaint that any such allegations come to light. For example, among other things Asset Value's proposed Section 10(b) claim asserts, for the first time in this litigation:

> (i) that before entering into the Subscription Agreement, Care "knew that [it] was likely to conclude an investment with [third parties] and, shortly thereafter, likely to write down millions of dollars of assets that were creating the materially misleading and false impression that [Care] was far more valuable and profitable than it in fact actually was";
>
> (ii) that Care "induce[d] [Asset Value] to enter into the Subscription Agreement" by delivering to it certain documents "with the specific purpose that [Asset Value] would read the [documents], form opinions as to the company and its financial condition, and rely upon those [documents] in deciding whether or not to purchase shares under the Subscription Agreement"; and

---

1. In order to state a cause of action under Rule 10b–5, a plaintiff must allege that,

> in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused [plaintiff] injury.

*In re Time Warner,* 9 F.3d at 264 (quoting *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985)) (alteration in original); *accord Feinman v. Dean Witter Reynolds, Inc.,* 84 F.3d 539, 540 (2d Cir.1996).

(iii) that "[h]ad it not been for the misrepresentations and omissions set forth [in the amended complaint], [Asset Value] would not have entered into the Subscription Agreement and suffered the consequential damages that it suffered, or it would have [done so] at a far more favorable price, or it would have uncovered [Care's] fraud at an earlier date."

Asset Value may well be correct that these and other allegations in the proposed amended complaint plead a viable securities fraud claim under Section 10(b) and Rule 10b-5 [2] that is sufficient to confer federal subject matter jurisdiction upon this Court. But because those allegations did not appear in the original complaint, and because the original complaint contained no other factual allegations from which the proposed claims could legitimately arise, or through which Care could reasonably be put on notice of such claims, Asset Value cannot amend its complaint to include those allegations now.[3] Manifestly, Asset Value's proposed amendment "seeks not to remedy inadequate juris-

dictional allegations, but rather to substitute a new action over which there is jurisdiction for one where it did not exist." *Pressroom Unions–Printers,* 700 F.2d at 893. As such, the amendment is precluded under long-standing principles of pleading and jurisdiction.[4]

In any event, the Court finds that Asset Value's motion to amend would cause "undue prejudice to the opposing party," *Rachman Bag Co.,* 46 F.3d at 234, and should be denied for that reason as well. Asset Value's arguments notwithstanding, Care would suffer severe prejudice were the proposed amendment permitted at this time. While the discovery conducted to date may not have been extensive, Care plainly had no idea that it was (or should have been) preparing to defend against federal securities fraud claims in connection with the parties' entry into the Subscription Agreement in the first instance. Rather, based on the allegations in the original complaint, Care faced much more circumscribed state law claims based solely on its alleged failure to perform one specific part of that Subscription Agree-

---

2. Along these lines, the recent Care press release may indeed substantiate the proposed claim. Nevertheless, whether or not the securities claim is viable on the merits is immaterial to whether an amendment adding such a claim is appropriate at this juncture, especially since the Court does not reach the issue of whether the amendment would be "futile."

3. For these same reasons, to the extent that the issue is relevant here, the Court finds that Asset Value's proposed claim does not "ar[i]se out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," and therefore does not "relate[ ] back" to the date of the original complaint for purposes of Rule 15(c)(2), Fed.R.Civ.P. Asset Value concedes that the relation back inquiry primarily involves the question of "adequacy of notice." *See, e.g., In re Chaus Secs. Litig.,* 801 F.Supp. 1257, 1264 (S.D.N.Y.1992) (question depends on "whether adequate notice of the matters raised in the amended pleading has been given to the opposing party by the general fact situation alleged in the original pleading") (internal quotations and citations omitted). The factual allegations in the original complaint pertained only to Care's failure to register stock in accordance with its commitment under the Subscription Agreement; because those allegations said nothing, let alone raised any claims, regarding Care's actions in entering into the Subscription Agreement and selling stock to Asset Value, the original complaint failed to give adequate notice of the new

federal securities fraud claim based on those subjects.

4. The cases Asset Value cites from other jurisdictions are entirely consistent with this Court's reasoning and require no different result. *See, e.g., Berkshire Fashions, Inc. v. M.V. Hakusan II,* 954 F.2d 874, 887 (3d Cir.1992) ("We know of no absolute prohibition against asserting another basis for jurisdiction in an amendment to a pleading, provided that such jurisdiction would have existed at the time the complaint was originally filed."); *Scattergood v. Perelman,* 945 F.2d 618, 627 (3d Cir.1991) (remanding after dismissal of federal claims to allow amendment to allege diversity jurisdiction under Rule 15(a) and Section 1653, given that the latter provision "permits amendments broadly so as to avoid dismissal of diversity suits on technical grounds") (citation omitted); *Miller v. Stanmore,* 636 F.2d 986, 990 (5th Cir.1981) (remanding to permit amendment under both Rule 15(a) and Section 1653 where "[t]he requested amendment would have done no more than state an alternative jurisdictional basis for recovery upon the facts previously alleged"); *May Dep't Store v. Graphic Process Co.,* 637 F.2d 1211, 1216 (9th Cir.1980) (permitting amendment under Section 1653 to plead proper allegation of interstate commerce in commercial bribery action, where "[t]he interstate character of the companies involved may provide a sufficient commerce nexus to meet the jurisdictional requirement").

ment, subsequent to the Agreement's formation; and Care undoubtedly conducted its pretrial preparations on that basis. It is impossible to forecast the type or extent of additional discovery, or how different or complex a trial strategy, Care would have pursued had it been on notice from the beginning of a federal securities fraud claim related to the sale of stock and the formation of the Subscription Agreement. Asset Value's proposal to amend its complaint, made after the close of discovery, on the eve of trial, and in a manner that would dramatically alter the complexion of the litigation, simply asks too much of the defendant and this Court, too late in the day.

## CONCLUSION

For the reasons set forth above, Asset Value's motion to amend the Complaint is denied. Given that complete diversity of citizenship is lacking in this action, and that the original complaint contains no allegations that would support federal question subject matter jurisdiction, this action is dismissed. *See* Rule 12(h)(3), Fed.R.Civ.P. The Clerk of Court shall enter judgment for the defendant Care and close the case.

SO ORDERED.